IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ASIYAH THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV312 |
| | ) | |
| EAST PENN MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

Before this court is Defendant's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 14.) Asiyah Thomas ("Plaintiff") brings racial discrimination claims under Title VII, 42 U.S.C. § 1981, and North Carolina Public Policy against her former employer, East Penn Manufacturing Co. ("Defendant"). (Complaint ("Compl.") (Doc. 1).) Plaintiff alleges Defendant discriminated against her based on her race when she was terminated, retaliated against her for engaging in protected activity, and subjected her to a racially hostile work environment. (Id.) Defendant counters that Plaintiff's claims are barred by res judicata or, alternatively, failure to state a claim. For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

When considering a motion under Fed. R. Civ. P. 12(c), a district court is "required to accept all well-pleaded allegations of [the] complaint as true and draw all reasonable factual inferences in [plaintiff's] favor." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014). The following facts are taken from the Complaint, Answer, and documents attached to the Answer. Defendant, for the purposes of its motion, concedes all facts as stated in the Complaint. (Def.'s Br. in Supp. of Mot. for Judgment on the Pleadings ("Def.'s Br.") (Doc. 15) at 3.)

### A.    Parties

Plaintiff is a resident of Forsyth County, North Carolina, and a former "employee" of Defendant as defined in Title VII. (Compl. (Doc. 1) ¶ 3.) Plaintiff is an African-American woman. (Id. ¶ 5.) She was employed by Defendant from March 2015 until December 18, 2018. (Id. ¶ 6.) Defendant is a company incorporated under the laws of Pennsylvania. (Id. ¶ 4.) Defendant owned the Winston-Salem location where Plaintiff was employed. (Id. ¶ 6.)

### B.    First Lawsuit ("Thomas I")

Soon after she began working for Defendant in 2015, Plaintiff alleges she was subjected to racial discrimination. (Id. ¶ 10.) Plaintiff alleged numerous instances of

- 2 -

discriminatory behavior. (Id. ¶ 11). Plaintiff reported the alleged conduct to her supervisors, both of whom told her to stop complaining. (Id. ¶ 12.) Plaintiff eventually retained counsel, and on December 1, 2016, she filed her first EEOC Charge. (Id. ¶¶ 13, 17.) That charge alleged ongoing racial and pregnancy discrimination by both coworkers and supervisors. (Answer (Doc. 12) at 30-59, 61, 64-66.)

Plaintiff alleges that, after she filed her 2016 EEOC Charge, she continued to face discrimination. (Compl. (Doc. 1) ¶ 18; Answer (Doc. 12) at 17 (Plaintiff's 2018 EEOC Charge).) Plaintiff alleges numerous additional instances of discriminatory conduct by her coworkers and at least one supervisor. (Compl. (Doc. 1) ¶ 18.) Plaintiff's supervisors again told her to stop complaining and took no action. (Id. ¶ 21.)

Plaintiff filed a pro se lawsuit in this court on April 4, 2017 ("Thomas I"). (Id. ¶ 23.) That lawsuit was based on her December 1, 2016 EEOC charge. (Id.) Plaintiff broadly alleged racial and pregnancy discrimination under Title VII. Thomas v. E. Penn Mfg. Co., No. 1:17CV306, 2018 WL 1578156, at *1, *5 (M.D.N.C. Mar. 29, 2018). This court dismissed that lawsuit as time-barred under 42 U.S.C. § 2000e-5(e)(1) since Plaintiff filed her charge of discrimination more than 180 days from the

- 3 -

date of the last alleged act of discrimination. Id. at *4–5. On March 29, 2018, the court dismissed Thomas I with prejudice under Fed. R. Civ. P. 12(b)(6). Id. at *5–6; (Compl. (Doc. 1) ¶ 26.)

Just after Plaintiff filed Thomas I, she participated in the investigation of a coworker's own EEOC Charge (the "Lindsay EEOC Charge Investigation"). (Id. ¶¶ 22, 24.)

### C.  Post-Thomas I Allegations

Plaintiff alleges that from "March 29, 2018 until December 18, 2018 plaintiff continued to be subjected to severe, pervasive, and continuous discrimination and retaliation . . . ." (Id. ¶ 27.) Specifically, Plaintiff alleges the following facts:

   a.  A white co-employee cussed out the shipping supervisor in front of the plaintiff and received no discipline, while African-American employees were disciplined for insubordination.

   b.  White employees broke a scale and attempted to place the blame on the plaintiff.

   c.  White co-employees trashed plaintiff's workspace in an attempt to prevent her from completing her work.

   d.  A black co-employee was suspended for an attendance violation, but two white employees were not suspended for the same violation.

(Id.) Plaintiff also alleges that she received a disciplinary write-up shortly after Thomas I was dismissed. (Id. ¶ 28.)

- 4 -

Plaintiff alleges the safety-related infraction cited in the write-up never occurred. (Id.)

Plaintiff filed another EEOC Charge in April 2018 alleging a hostile work environment and retaliation for her previous lawsuit. (Id. ¶ 31.) That EEOC Charge cited the disciplinary write-up and actions by white-coworkers to disrupt her workspace. (Answer (Doc 12.) at 17.) Plaintiff received her right-to-sue letter from the EEOC on December 26, 2018. (Id. at 18.)

### D.  **Plaintiff's Termination**

On December 11, 2018, a large snowstorm impacted the Winston-Salem area. (Id. ¶ 32.) Though it is not entirely clear from the Complaint, it appears to suggest that Defendant's "sign out" system was impacted by the weather, and employees were not able to sign out on December 11, 2018. (Id.) Plaintiff alleges she was given permission by a supervisor to leave early on December 11, though she was not able to sign out. (Id.) "Upon information and believe [sic], on December 12, 2018, defendant had other employees backdate the December 11, 2018 sign-out sheet while plaintiff was not present, in order to create a pretextual reason to terminate plaintiff." (Id. ¶ 33.) The incident was investigated by Defendant, and Plaintiff was subsequently terminated on December 18, 2018. (Id. ¶¶ 33–34.)

- 5 -

Plaintiff's vacant position was filled by a "less qualified white employee." (Id. ¶ 36.)

Plaintiff filed another EEOC Charge on February 1, 2019, citing her allegedly discriminatory termination. (Id. ¶ 39.) The EEOC issued Plaintiff a right-to-sue letter for that charge on February 20, 2019. (Id. ¶ 40.)

### E. **Procedural History**

Plaintiff filed this present suit ("Thomas II") on March 19, 2019. (Id. at 17.) The Thomas II Complaint's allegation in paragraphs 6 through 18[1] encompass many of the same factual allegations raised in Thomas I. (Compare Compl. (Doc. 1) ¶¶ 6-16, with Answer (Doc. 12) at 22-66.)

Plaintiff brings four claims for relief. Claim One is for Race Discrimination under Title VII of the Civil Rights Act of 1964. (Compl. (Doc. 1) ¶¶ 42-47.) Specifically, Plaintiff claims Defendant discriminated against her by "[s]ubjecting plaintiff to a racially hostile workplace" and by "[t]erminating plaintiff's employment," both acts in violation of 42 U.S.C. § 2000e-2(a). (Id. ¶ 44.) Claim Two is for Defendant's alleged

---

[1] Paragraph 18 alleges conduct that occurred between December 1, 2016, until May 4, 2018. (Compl. (Doc. 1) ¶ 18.) Plaintiff filed Thomas I on April 4, 2017. (Id. ¶ 23.) The Complaint does not specify what conduct alleged in paragraph 18 occurred before and after Thomas I was filed.

retaliation against Plaintiff for engaging in protected activity, in violation of 42 U.S.C. 2000e-3. (Id. ¶¶ 48-53.) Claim Three alleges race discrimination under 42 U.S.C. § 1981, specifically Defendant's racially hostile work environment and its racially discriminatory discharge of Plaintiff. (Id. ¶¶ 54-59.) Finally, Claim Four is for Wrongful Discharge in Violation of the Public Policy of North Carolina as stated in N.C. Gen. Stat. § 143-422.2. (Id. ¶¶ 60-65.)

Defendant filed an Answer raising the affirmative defense of res judicata. (Answer (Doc. 12) at 11.) Shortly after filing its Answer, Defendant moved for judgment on the pleadings pursuant to Rule 12(c). (Doc. 14.) Defendant filed a supporting brief, (Def.'s Br. (Doc. 15)), Plaintiff responded, (Pl.'s Resp. to Mot. for Judgment on the Pleadings ("Pl.'s Resp.") (Doc. 22)), and Defendant replied, (Def.'s Reply to Pl.'s Resp. to Mot. for Judgment on the Pleadings ("Def.'s Reply") (Doc. 23)). The Magistrate Judge stayed discovery pending this court's adjudication of Defendant's 12(c) motion. (Text Order 10/07/2019.)

For the reasons stated herein, the court will grant Defendant's motion as to Plaintiff's retaliation and hostile work environment claims. The court will deny the motion as to

- 7 -

Plaintiff's wrongful discharge claims under Title VII, § 1981, and North Carolina Public Policy.

## II. <u>STANDARD OF REVIEW</u>

A party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). Such motions are "designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings." <u>Preston v. Leake</u>, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). The pleadings, matters of public record, exhibits to the pleadings, "and exhibits to the Rule 12(c) motions that [are] integral to the complaint and authentic" may be considered. <u>Massey</u>, 759 F.3d at 347–48 (citation omitted).

"The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." <u>Drager v. PLIVA USA, Inc.</u>, 741 F.3d 470, 474 (4th Cir. 2014). Since the standards are the same, a court reviewing a motion under Fed. R. Civ. P. 12(c) must "apply the standard for a Rule 12(b)(6) motion," meaning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.</u>, 814 F.3d 171, 176 (4th Cir. 2016) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "[T]he

- 8 -

court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor." SmithKline Beecham Corp. v. Abbott Labs., No. 1:15CV360, 2016 WL 922792, at *3 (M.D.N.C. Mar. 10, 2016) (citations omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

Defendant's motion is largely focused on res judicata and collateral estoppel arguments. Defendant argues that since Thomas II is based on much of the same conduct alleged in Thomas I, Plaintiff is barred from bringing suit and seeking a "second bite at the apple." (Def.'s Br. (Doc. 15) at 1.) Defendant also appears to argue that even the new Thomas II facts now alleged by Plaintiff are part of the same transaction as the Thomas I facts, meaning the court is foreclosed from addressing new alleged wrongs that occurred after Thomas I was dismissed. (Id. at 13.) Defendant finally argues that if the court does consider post-Thomas I facts, then Plaintiff's Complaint should be dismissed for failure to state a claim. (Id. at 14, 17.)

Plaintiff counters that res judicata does not bar the court from considering pre- or post-Thomas I facts since the alleged

- 9 -

conduct is part of a continuing scheme of conduct. Though
Plaintiff concedes she cannot recover for any damages occurring
during the period covered by Thomas I, she argues that conduct
can still be considered by the court. (Pl.'s Resp. (Doc. 22) at
20-21.) Plaintiff does not address whether she has plausibly
alleged her claims based on post-Thomas I facts alone.

The court will begin by addressing Defendant's res judicata
contention, finding res judicata bars claims that were or could
have been raised in Thomas I, but does not bar allegations of
subsequent wrongs. The court will then analyze the Thomas II
facts to determine if they plausibly allege causes of action.

**A.    Res Judicata (Claim Preclusion)[2]**

> **1.    Res Judicata Bars All Claims Brought or Available
> in Thomas I**

"A fundamental precept of common-law adjudication, embodied
in the related doctrines of collateral estoppel and res
judicata, is that a right, question or fact distinctly put in
issue and directly determined by a court of competent

---

[2] "The Restatement of Judgments now speaks of res judicata
as 'claim preclusion' and collateral estoppel as 'issue
preclusion.' Some courts and commentators use 'res judicata' as
generally meaning both forms of preclusion." Allen v. McCurry,
449 U.S. 90, 94 n.5 (1980) (quoting Restatement (Second) of
Judgments § 74 (Tent. Draft No. 3, Apr. 15, 1976)). This court
will use "res judicata" to refer to claim preclusion, and
"collateral estoppel" to refer to issue preclusion.

jurisdiction cannot be disputed in a subsequent suit between the same parties." Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990) (alteration in original) (quoting S. Pac. R.R. v. United States, 168 U.S. 1, 48–49 (1897)). "The preclusive effect of a judgment issued by a federal court is a legal question governed by federal common law." United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 912 (4th Cir. 2013) (citing Taylor v. Sturgell, 553 U.S. 880, 891 (2008)).

Three elements are needed to bar a claim on res judicata grounds: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." Aliff, 914 F.2d at 42; see also Montana v. United States, 440 U.S. 147, 153 (1979) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.").

Regarding the third element,

> [t]he Fourth Circuit has consistently articulated a clear rule to determine the identity of claims for res judicata purposes, adopted from the Second Restatement of Judgments § 24: There is sufficient identity in the causes of action when claims "arise out of the same transaction or series of transactions, or the same core of operative facts."

Taylor v. Norfolk S. Ry. Co., 86 F. Supp. 3d 448, 456 (M.D.N.C. 2015) (quoting In re Varat Enters., Inc., 81 F.3d 1310, 1316

- 11 -

(4th Cir. 1996)). This approach to identifying precluded claims "asks only if a claim made in the second action involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir. 1986). This applies to all claims that could have been brought in the previous lawsuit, not just the ones that a plaintiff actually brought. Nevada v. United States, 463 U.S. 110, 129–30 (1983); In re Varat Enters., Inc., 81 F.3d at 1315. "To preclude claims not brought earlier, the court need only determine that they were 'available' to the plaintiff in the first action." Taylor, 86 F. Supp. 3d at 456 (citing Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 210–11 (4th Cir. 2009)); see also Keith v. Aldridge, 900 F.2d 736, 740 n.5 (4th Cir. 1990) ("For res judicata purposes, . . . it is the existence of the claim, not awareness of it, that controls.").

The dismissal of a previous claim does not automatically bar, at least on res judicata grounds, consideration of the underlying facts as background evidence in a new suit. Wedow v. City of Kansas City, 442 F.3d 661, 669 (8th Cir. 2006) (considering evidence from previous suit); L.A. Branch NAACP v. L.A. Unified Sch. Dist., 750 F.2d 731, 739 (9th Cir. 1984) (en banc) (same); Bronson v. Bd. of Ed. of City Sch. Dist. of

_Cincinnati_, 525 F.2d 344, 349–50 (6th Cir. 1975) (same). As Wright and Miller put it, the "conclusion that continuing activity generates a new claim need not mean that the earlier activity is irrelevant to the new claim." 18 Charles Alan Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 4409 (3d ed. 2019).

Though a court may consider facts from a previous claim as background evidence, a plaintiff is barred from using those facts to establish a defendant's liability. _See_ _Dilettoso v. Potter_, 243 F. App'x 269, 272 (9th Cir. 2007) (refusing to base hostile work environment liability on facts alleged in previous suit); _Matthews v. City of Mobile_, Civil Action No. 14-00601-KD-N, 2016 WL 1736061, at *16 (S.D. Ala. May 2, 2016) (considering background facts, but not using them to determine possible liability); _Gresham v. District of Columbia_, 66 F. Supp. 3d 178, 191 n.6 (D.D.C. 2014). "The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit." _Misischia v. St. John's Mercy Health Sys._, 457 F.3d 800, 805 (8th Cir. 2006) (quoting _Dubuc v. Green_

- 13 -

Oak Twp., 312 F.3d 736, 751 (6th Cir. 2002)).[3]

Any claims Plaintiff could have brought or actually did bring in Thomas I are now barred by res judicata.[4] The first two

---

[3] Defendant asks this court to strike the portions of the current Complaint containing Thomas I facts. (Def.'s Reply (Doc. 23) at 8–9.) However, "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)). Further, as demonstrated by the cases cited above, courts may consider facts from previous suits as background evidence. For those reasons, the court denies Defendant's request that the court strike the Thomas I facts from the Complaint.

[4] This conclusion is not altered by the principles announced in National Railroad Passenger Corp. v. Morgan. Morgan permits courts to consider certain evidence of a hostile work environment that occurred outside the statutory filing period for EEOC charges; however, Morgan did not address whether res judicata barred consideration of conduct alleged and litigated in previous suits. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). Res judicata operates as a doctrine separate from Morgan and can bar the consideration of facts that the timeliness rules of Morgan might otherwise permit. See Emerick v. Wood River-Hartford Sch. Dist. No. 15, Case No. 16-cv-0788-MJR-RJD, 2017 WL 2778624, at *6 (S.D. Ill. June 27, 2017) (analyzing res judicata and Morgan "Time-bar" issues separately); Baez v. New York, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014), aff'd, 629 F. App'x 116 (2d Cir. 2015) (noting that res judicata is a doctrine preventing the relitigation of claims that might otherwise be timely under Morgan); Nakis v. Potter, 422 F. Supp. 2d 398, 410–11 (S.D.N.Y. 2006) (noting that Morgan allows consideration of time-barred conduct, but prohibiting consideration of such conduct on res judicata grounds); Graham v. Gonzales, No. Civ. A. 03-1951 RWR, 2005 WL 3276180, at *7 (D.D.C. Sept. 30, 2005) (noting that the court may only consider facts otherwise allowed by Morgan if doing so is not barred by res judicata).

- 14 -

prongs, a judgment on the merits and identity of the parties, are not in question. The previous suit was between the same parties, Plaintiff and Defendant East Penn. Also, the dismissal under Rule 12(b)(6), Thomas, 2018 WL 1578156, at *1, *6, was with prejudice, an adjudication on the merits,[5] Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 173 (3d Cir. 2009); Mills v. Des Arc Convalescent Home, 872 F.2d 823, 826 (8th Cir. 1989); Blakes v. Gruenberg, No. 1:16-cv-00240-GBL-MSN, 2016 WL 8731784, at *5 (E.D. Va. July 29, 2016) (citing Mills); Robertson v. Cree, Inc., No. 5:10-CV-507-H, 2012 WL 699533, at *1 (E.D.N.C. Mar. 1, 2012) (citing Mills); cf. S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing — or any other defect in subject matter jurisdiction — must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). A timely filed charge of discrimination is not a jurisdictional requirement but rather operates like a statute of limitations and must be affirmatively raised and plead. Zipes v. Trans World

---

[5] Plaintiff "reserves her contention that a dismissal for 'timeliness' is not a final dismissal 'on the merits' when the Court never addressed the substantive legal claims [in Thomas I]." (Pl.'s Resp. (Doc. 22) at 12 n.2.) As the cases cited show, such a contention would be fruitless.

Airlines, Inc., 455 U.S. 385, 393 (1982); see also Fort Bend
Cty. v. Davis, ____ U.S. ____, 139 S. Ct. 1843 (2019). The court
had jurisdiction to rule on the merits in Thomas I, and
dismissed the case pursuant to Rule 12(b)(6), a dismissal with
prejudice and on the merits. See Robertson, 2012 WL 699533, at
*1 (finding a dismissal of a Title VII action for untimely
filing is one on the merits).

Finding that any claims that could have or were brought in
Thomas I are now barred in Thomas II, the court will now
identify which of Plaintiff's current allegations are part of
the same core of operative facts as in Thomas I.

### 2. Analysis of Specific Allegations

Some, but not all, of Plaintiff's factual allegations are
barred by res judicata. If Plaintiff's current allegations
"arise out of the same transaction or series of transactions, or
the same core of operative facts," In re Varat Enters., Inc., 81
F.3d at 1316, as in Thomas I, or they were available to
Plaintiff, Keith, 900 F.2d at 740 n.5, then they are barred. If
they are new and distinct from the core of operative facts in
Thomas I, then they are not.

### a. Legal Background: New Claims Not Barred

New factual developments can give rise to "a fresh cause of
action . . . ." Union Carbide Corp. v. Richards, 721 F.3d 307,

- 16 -

315 (4th Cir. 2013); see also Bennett v. Garner, 913 F.3d 436, 440-41 (4th Cir. 2019) ("[R]es judicata does 'not bar a claim that does not accrue prior to the litigation triggering the bar.'" (quoting Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 159, 795 S.E.2d 887, 900 (2017))). Indeed, a previous suit "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955). A contrary doctrine of res judicata "would in effect confer on [defendants] a partial immunity from civil liability for future violations." Id. at 329. In the Title VII context, "[s]erial violations may be 'composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII . . . ,'" Havercombe v. Dep't of Educ. of Com. of P.R., 250 F.3d 1, 7 (1st Cir. 2001) (quoting Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)), and "res judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action," Crowe v. Leeke, 550 F.2d 184, 187 (4th Cir. 1977); see also Smith v. Potter, 513 F.3d 781, 783 (7th Cir. 2008) ("The filing of a suit does not entitle the defendant to continue or repeat the unlawful conduct with immunity from

- 17 -

further suit."); <u>Waldman v. Vill. of Kiryas Joel</u>, 207 F.3d 105,
113 (2d Cir. 2000) ("It is true that res judicata will not bar a
suit based upon <u>legally significant acts</u> occurring after the
filing of a prior suit that was itself based upon earlier acts."
(emphasis added)).

However, the newly alleged discriminatory acts must be more
than "additional instances of what was previously asserted."
<u>Waldman</u>, 207 F.3d at 113. As the Second Circuit opined,

> a suit for sexual harassment might bar a later suit
> (based on substantially the same facts) for a hostile
> work environment. And the occurrence of another like
> incident or two would probably not be enough to change
> matters. Yet, at some point, repetition of the same or
> similar acts may well give rise to a new claim, and
> the latter action — based, as it would be, primarily
> upon a cumulation of events occurring after the first
> suit — would not then be precluded by res judicata.

<u>Id.</u> at 113-14. In sum, a new, independent cause of action that
arose after a previous suit is not barred by that previous suit.
<u>See, e.g.</u>, <u>Lawlor</u>, 349 U.S. at 328; <u>Bennett</u>, 913 F.3d at 440-41;
<u>Union Carbide Corp.</u>, 721 F.3d at 315.

A number of circuits have adopted a bright line rule that
res judicata does not apply to events post-dating the filing of
the initial complaint. <u>See</u> <u>Howard v. City of Coos Bay</u>, 871 F.3d
1032, 1039 (9th Cir. 2017) (collecting cases and suggesting the
Fourth Circuit is one such circuit); <u>Serna v. Holder</u>, 559 F.
App'x 234, 238 (4th Cir. 2014) ("As the district court found,

- 18 -

all of the adverse employment actions Serna alleged in her second lawsuit had likely come to pass prior to the filing of the amended complaint in her first lawsuit . . . ."); see also Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 314 (5th Cir. 2004); Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998); Murry v. Gen. Servs. Admin., 553 F. App'x 362, 365 (5th Cir. 2014); Cruthirds v. Lacey, No. 5:14-CV-00260-BR, 2017 WL 3754764, at *5 (E.D.N.C. Aug. 30, 2017); Brown v. City of New York, No. 14 Civ. 2668(PAE), 2014 WL 5394962, at *5 (S.D.N.Y. Oct. 23, 2014), aff'd, 622 F. App'x 19 (2d Cir. 2015). This court is not persuaded that that the Fourth Circuit has adopted such a bright line rule.

When the Ninth Circuit in Howard collected circuit cases on the issue, it cited Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 774 (4th Cir. 1991), as "suggesting without deciding that res judicata need not 'preclude claims that could not have been brought at the time the first complaint was filed.'" Howard, 871 F.3d at 1039. In Young-Henderson, the Fourth Circuit did suggest, but did not hold, that claims arising after a suit is filed are not barred on res judicata grounds, nor is a plaintiff required to amend their complaint to include them. Id. at 774 n.3. A later unpublished opinion, Serna v. Holder, 559 F. App'x 234, 238 (4th Cir. 2014), did not

- 19 -

clarify the issue, nor did the Fourth Circuit articulate a bright line about when res judicata takes effect. As pointed out by a district court, the Serna court was not precise in setting a line, noting that "[i]n Serna the facts [underlying] the second litigation 'had likely come to pass prior to Serna's filing of the amended complaint in her first lawsuit in August 2010, and certainly before she and the government voluntarily dismissed the case in August 2011.'" Mack v. S.C. Dep't of Transp., C/A No. 3:15-2624-MGL-KDW, 2016 WL 8672772, at *6 (D.S.C. Mar. 18, 2016), report and recommendation adopted, Civil Action No. 3:15-2624-MGL-KDW, 2016 WL 2848369 (D.S.C. May 16, 2016) (quoting Serna, 559 F. App'x at 238). The Mack court itself applied res judicata to claims that arose after a first amended complaint was filed but before the suit was dismissed. Id. at *7. As that court explained, "[p]laintiff has pointed to no controlling authority indicating only claims that arose prior to the day a litigation is commenced can be foreclosed by res judicata. In Serna, the court noted the foreclosed claims may have existed before suit was filed but 'certainly' existed before the case was dismissed." Id. (quoting Serna, 559 F. App'x at 238). As Serna itself points out, "what matters is that the

claim itself existed at the time of the first lawsuit." <u>Serna</u>,
559 F. App'x at 238.[6]

In addition to res judicata principles, Title VII's
administrative exhaustion requirements may further limit the
claims and allegations that a court can consider in a subsequent
suit. As the Fourth Circuit has made clear, res judicata bars
all previous claims that "could have been litigated," not just
the ones that were. <u>Pueschel v. United States</u>, 369 F.3d 345,
355-56 (4th Cir. 2004). Title VII's administrative exhaustion
requirements limit claims in the following way:

> "Only those discrimination claims stated in the
> initial charge, those reasonably related to the
> original complaint, and those developed by reasonable
> investigation of the original complaint may be
> maintained in a subsequent Title VII lawsuit." <u>Evans</u>
> <u>v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 963
> (4th Cir. 1996). A plaintiff fails to exhaust
> administrative remedies where "his administrative
> charges reference different time frames, actors, and
> discriminatory conduct than the central factual
> allegations in his formal suit." <u>Chacko v. Patuxent</u>
> <u>Inst.</u>, 429 F.3d 505, 506 (4th Cir. 2005).

<u>Day v. Advance Stores Co.</u>, No. 1:09-CV-664, 2010 WL 1286666, at
*5 (M.D.N.C. Mar. 29, 2010). Regarding hostile work environment
claims, "as long as the employer has engaged in enough activity

---

[6] As discussed more fully below, Plaintiff's allegations
either occurred before <u>Thomas I</u> was filed, are continuations of
conduct occurring before <u>Thomas I</u> was filed, or occurred after
<u>Thomas I</u> was dismissed.

to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim . . . ." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). This language suggests that continuing acts of hostility may be pursued under an original charge without filing a new one, but the Fourth Circuit has not addressed that issue directly. It has clearly held that a "plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge [need not] exhaust administrative remedies before suing in federal court." Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) (emphasis added). In so holding, the Fourth Circuit recognized "that rule is the inevitable corollary of our 'generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'" Id. (quoting Hill v. W. Elec. Co., 672 F.2d 381, 390 n.6 (4th Cir. 1982)). A plaintiff who is retaliated against for filing an EEOC charge in the first place may bring a Title VII retaliation claim in federal court without filing another EEOC charge. Id.

### b.    <u>Plaintiff's Allegations</u>

First, the allegations in paragraphs 11 through 17 in the Complaint are a part of the same core of operative facts as <u>Thomas I</u>. Plaintiff made the same allegations in <u>Thomas I</u>, meaning she actually raised the facts, and the claims they supported, in her pro se lawsuit. (<u>Compare</u> Compl. (Doc. 1) ¶¶ 11–17, <u>with</u> Answer (Doc. 12) at 22–66.) Likewise, the facts in paragraphs 19, 20, 21, 23, 24, and 25 all occurred prior to or during <u>Thomas I</u>, meaning those facts and any claims they raise were part of the same core of operative facts. The facts in paragraphs 11 through 17 and 19, 20, 21, 23, 24, and 25, therefore, are part of the same core of operative facts as <u>Thomas I</u>. Plaintiff is barred by res judicata from asserting liability on those facts.

The factual allegations in paragraphs 22, and 27 through 36, however, are not barred by res judicata. These factual allegations occurred after <u>Thomas I</u> was dismissed. (Compl. (Doc. 1) ¶¶ 26–27.) Paragraph 22 deals with Plaintiff's participation in the Lindsay EEOC Charge investigation, a distinct set of facts from her own lawsuit that the court will consider. Though some of the allegations in paragraph 27 are similar to conduct alleged in paragraph 18, those acts occurred after <u>Thomas I</u> was dismissed, meaning that they are not barred by res judicata.

- 23 -

See, e.g., Lawlor, 349 U.S. at 328; Bennett, 913 F.3d at 440–41; Union Carbide Corp., 721 F.3d at 315. Assuming the allegations in these paragraphs are sufficient to plausibly state a claim, Plaintiff is not barred by res judicata from using them to establish liability since they were not available to Plaintiff during her first suit.

Though a closer call, the court finds that res judicata also bars consideration of the facts in paragraph 18, because paragraph 18 alleges a course of conduct that began before Thomas I was filed. (Compl. (Doc. 1) ¶ 18.)

Plaintiff alleges the acts in paragraph 18 occurred between the time she filed her first EEOC charge, December 1, 2016, to May 4, 2018;[7] she does not allege dates for each specific instance. (Id.) Thomas I was filed on April 4, 2017, and dismissed on March 29, 2018. (Id. ¶¶ 23, 26.) However, Plaintiff alleges that the course of discriminatory and retaliatory conduct alleged in paragraph 18 started the same day she filed her December 2016 EEOC Charge. (Id. ¶¶ 17–18.) Her subsequent EEOC Charge in April 2018 confirms that the course of conduct alleged in paragraph 18 was in retaliation for her 2016 EEOC

_____

[7] Though Plaintiff alleges the course of conduct in paragraph 18 occurred until May 4, 2018, Plaintiff alleges a separate course of conduct that began March 29, 2018. (Compl. (Doc. 1) ¶ 27.) It is unclear why Plaintiff has pled this overlap.

- 24 -

Charge. As Plaintiff stated in the April 2018 EEOC Charge, "Since the filing of my initial EEOC complaint I have been subjected to harassment by my co-workers and retaliation." (Answer (Doc. 12) at 17 (Plaintiff's April 2018 EEOC Charge).) Plaintiff's own allegations, therefore, support the conclusion that the allegations in paragraph 18 were retaliatory acts for the filing of her 2016 EEOC Charge and is "like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." Nealon, 958 F.2d at 590. The allegations set out in paragraph 18 are claims which "arise out of the same transaction or series of transactions, or the same core of operative facts." Taylor, 86 F. Supp. 3d at 456 (quoting In re Varat Enters., Inc., 81 F.3d at 1316).

The kind of conduct alleged in paragraph 18 supports the conclusion that it was retaliatory; it is different in kind and quality from the conduct upon which her 2016 EEOC Charge was based. Rather than a course of general racial hostility, coworkers and supervisors directed animus at Plaintiff specifically. (Compare Compl. (Doc. 1) ¶ 11, with ¶ 18.) Other than the allegation in paragraph 18(a), every other alleged act was directed at Plaintiff. This supports Plaintiff's conclusion that the conduct was in retaliation for her protected

- 25 -

activities. Retaliation that began before Thomas I was filed in April 2017 is barred by res judicata, because it was conduct Plaintiff was aware before filing suit, and thus any claims it supported were available to Plaintiff then. Conduct that continued during the pendency of Thomas I is still the same part of that retaliatory "series." (See id. ¶ 18.) It is conduct that is "like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission," Nealon, 958 F.2d at 590, and such allegations are claims which "arise out of the same transaction or series of transactions, or the same core of operative facts," Taylor, 86 F. Supp. 3d at 456 (quoting In re Varat Enters., Inc., 81 F.3d at 1316).

Turning to what facts and claims Title VII's administrative requirements would have allowed Plaintiff to bring in Thomas I, Fourth Circuit precedent would have permitted Plaintiff to bring any retaliation claim that arose from her first EEOC charge. See Nealon, 958 F.2d at 590. Plaintiff characterizes the allegations in paragraph 18 as acts of "continuous discrimination and retaliation." (Compl. (Doc. 1) ¶ 18.) Indeed, other than the allegation in paragraph 18(a), all other allegations in paragraph 18 are plausibly classified as acts of retaliation. (See id.) Therefore, Plaintiff would not have been barred by

- 26 -

Title VII's administrative exhaustion requirements from including those facts and claims in Thomas I, even if continuing acts of a hostile work environment could not be included by amendment.

It also appears overt acts of racial discrimination would have been properly considered as a part of Plaintiff's original claim. Plaintiff's original EEOC charge alleged a racially hostile work environment stemming from the behavior of her supervisors and coworkers. (See Answer (Doc. 12) at 30–59, 61, 64–66.) "Subsequent events . . . may still be part of the one hostile work environment claim . . . ." Morgan, 536 U.S. at 117. Though some of the allegations may have occurred in a different time frame from her first EEOC charge, see Chacko, 429 F.3d at 506, the allegations in paragraph 18 are arguably part of the same allegations in the original charge, see Broome v. Iron Tiger Logistics, Civil Action No. 7:17cv444, 2019 WL 6719495, at *8 (W.D. Va. Dec. 10, 2019) (rejecting argument that post-charge hostile environment conduct was barred and finding "that the events that occurred after [the EEOC charge was filed] were reasonably related to the original complaint and thus [the plaintiff] sufficiently exhausted them when he filed the EEOC charge"); Refermat v. Lancaster Cent. Sch. Dist., No. 14-CV-0712-RJA-MJR, 2017 WL 10296874, at *6 (W.D.N.Y. Nov. 14, 2017),

- 27 -

report and recommendation adopted No. 14-CV-0712-RJA-MJR, 2018 WL 3640220 (W.D.N.Y. Aug. 1, 2018) (considering post-charge incidents of sexual harassment since such incidents were "continuing allegations of the same hostile and retaliatory environment as described in the EEOC charge"). Plaintiff's 2016 EEOC Charge alleged ongoing racial and pregnancy discrimination. (See Answer (Doc. 12) at 61, 64–66.) Plaintiff complained that both coworkers and supervisors subjected her to racial discrimination. (Id. at 64–66.) The allegations in paragraph 18 of the Thomas II Complaint mostly involve conduct by coworkers but do include one discriminatory act by a supervisor. (Compl. (Doc. 1) ¶ 18.) This distinguishes Plaintiff's allegations in paragraph 18 from Chacko, where that the plaintiff's "'centerpiece' at trial was that coworkers continually made derogatory national-origin remarks to him over the course of his twenty-year career, and that supervisors did not discipline these coworkers, laughed at their comments, and may have joined them." Chacko, 429 F.3d at 510–11. That plaintiff's EEOC charge, however, did not mention "coworker harassment or nation-origin epithets." Id. Unlike plaintiff in Chacko, Plaintiff here originally alleged ongoing racial discrimination by both coworkers and supervisors, the same type of conduct alleged in paragraph 18. In any event, most of the allegations in paragraph

- 28 -

18 could have been brought in Thomas I, at a minimum, as subsequent acts of retaliation.

### 3. **Res Judicata Conclusion**

To conclude the res judicata analysis, Plaintiff's own allegations describe the conduct in paragraph 18 as a course of retaliatory conduct linked to her 2016 EEOC Charge. That conduct began before she filed Thomas I; any part of that series of conduct that continued into the pendency of Thomas I would have still been part of the same series of conduct. Title VII would not have prevented Plaintiff from including most, or all, of paragraph 18's allegations in her previous suit. The facts in paragraph 18 allege claims that "could have been litigated" in Pueschel v. United States, 369 F.3d at 356. As the Fourth Circuit has noted, "what matters is that the claim itself existed at the time of the first lawsuit." Serna, 559 F. App'x at 238; see also Keith,, 900 F.2d at 740 n.5 ("For res judicata purposes, . . . it is the existence of the claim, not awareness of it, that controls.").

As the foregoing analysis demonstrates, those allegations that were part of the claim in Thomas I are barred by res judicata from establishing a new claim. This court finds that claims arising from the allegations contained in paragraphs 9-21 or 23-25 are part "of the same transaction or series of

- 29 -

transactions, or the same core of operative facts." Taylor, 86
F. Supp. 3d at 456 (quoting In re Varat Enters., Inc., 81 F.3d
at 1316). Therefore, the court will not consider those facts in
determining whether the allegations not barred by res judicata
constitute a new cognizable wrong or are just "additional
instances of what was previously asserted." Waldman, 207 F.3d at
113.[8]

B.     **Title VII and § 1981 Claims**

Title VII and Section 1981 each prohibit employment
discrimination on the basis of race. 42 U.S.C. § 2000e-2(a)(1);
42 U.S.C. § 1981. A race-based employment discrimination claim
must assert that the plaintiff "belongs to a racial minority"
and was either not hired, fired, or suffered some adverse
employment action due to his race. McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802 (1973); see also Thompson v. Potomac
Elec. Power Co., 312 F.3d 645, 649 n.1 (4th Cir. 2002) (stating

---

[8] Finding the Thomas I allegations are barred by res
judicata (claim preclusion), the court need not address
Defendant's collateral estoppel (issue preclusion) argument. As
with res judicata, collateral estoppel does not foreclose
consideration of new claims that arose after Thomas I. See In re
Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir.
2004). One of the elements a proponent of collateral estoppel
must prove is that the issue or fact in question is identical to
the previous suit. Id. Since Plaintiff had not been terminated
in Thomas I, it is impossible for Defendant to establish
collateral estoppel on that issue.

that the legal standard is the same under both Title VII and Section 1981). Claims for discrimination under Title VII and Section 1981 are analyzed under the same framework. See, e.g., White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). The court will therefore consider Plaintiff's Title VII and Section 1981 claims together.

Plaintiff's Claims One through Three are based on Title VII and Section 1981. Claim One alleges violations of Title VII in the form of a hostile work environment and wrongful discharge. (Compl. (Doc. 1) ¶¶ 42-47.) Claim Two alleges retaliation under Title VII. (Id. ¶¶ 48-53.) Claim Three again alleges hostile work environment and wrongful discharge in violation of § 1981. (Id. ¶¶ 54-59.) The court begins with Plaintiff's wrongful discharge claims under Title VII and § 1981.

### 1. **Wrongful Discharge**

"It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII and § 1981 claims are governed by the same standard. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016).

- 31 -

Under the McDonnell Douglas framework, to make out a prima facie case of racially motivated discharge, a plaintiff must establish that:

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); Carter v. Ball, 33 F.3d 450, 458–59 (4th Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)); see also Collin v. Rectors & Visitors of Univ. of Va., No. 96-1078, 1998 WL 637420, at *1 (4th Cir. 1998) (unpublished table decision); Valcarcel v. ABM Indus./Diversico Indus., No. 1:17-CV-00735, 2019 WL 2410802, at *3 (M.D.N.C. June 7, 2019); Tayn v. Kidde, 178 F. Supp. 2d 557, 561 (M.D.N.C. 2001), aff'd, 28 F. App'x 337 (4th Cir. 2002). Though the prima facie case utilized by the courts above does not include an element requiring an inference of discriminatory motivation behind the termination, such an inference is called for by the statute. See 42 U.S.C. § 2000e-2(a) (stating that it is unlawful to discharge an employee "because of such an individual's race . . . .").

> To state a Title VII status-based claim, a plaintiff must plausibly allege the requisite causal connection between the plaintiff's protected status and the alleged discrimination. See Guessous, 828 F.3d at 216-

- 32 -

17. "For status-based discrimination claims, the
employee must 'show that the motive to discriminate
was one of the employer's motives, even if the
employer also had other, lawful motives that were
causative in the employer's decision.'" Id. at 216-17
(quoting [Univ. of Tex. Sw. Med. Ctr. v.] Nassar, 570
U.S. 338, 343 (2013)).

Brown v. Wake Cty. Gov't, No. 5:16-CV-806-D, 2017 WL 2982971, at

*6 (E.D.N.C. July 12, 2017). That inference may be established

by circumstantial evidence of discriminatory treatment leading

up to a plaintiff's termination. See Desert Palace, Inc. v.

Costa, 539 U.S. 90, 101-02 (2003); Rowland v. Am. Gen. Fin.,

Inc., 340 F.3d 187, 192-93 (4th Cir. 2003).

 Plaintiff has alleged post-Thomas I facts that plausibly

support a claim of wrongful discharge under Title VII and

§ 1981. Plaintiff is an African-American woman who was

terminated from employment, and who alleges she was replaced by

a white person.[9] (Compl. (Doc. 1) ¶¶ 5, 34, 36.) She has

plausibly alleged facts supporting the first, second, and fourth

elements of a prima facie case, see Miles, 429 F.3d at 485, and

those facts are not disputed.

Plaintiff's allegations also plausibly support the third

element, that she had been performing her job satisfactorily.

---

[9] "[A]lthough replacement with a non-member of the protected
class is evidence of discriminatory intent, it is not essential
to the establishment of a prima facie case under Title VII."
Williams v. Trader Publ'g Co., 218 F.3d 481, 485 (5th Cir.
2000).

- 33 -

See id. Despite the fact that she received a write-up in March 2018, a write-up she alleges was retaliatory, she held her position for another eight months. (Compl. (Doc. 1) ¶¶ 28, 34.) This length of time permits a plausible inference that she was performing her job satisfactorily. Plaintiff also alleges that her termination was for a violation of attendance policies that never occurred. Though Plaintiff's conclusions are not sufficient to state a plausible claim, see Iqbal, 556 U.S. at 678, Plaintiff has alleged other facts that plausibly support the inference that her termination was not the result of poor job performance or policy violations.

First, Plaintiff has plausibly alleged that she did not violate any policies. Plaintiff alleges that she received a safety-related write-up in March 2018 for an event that never occurred, and that that write-up came the day after Thomas I was dismissed. (Compl. (Doc. 1) ¶¶ 28, 29.) Furthermore, taking Plaintiff's allegations as true, she was terminated for a violation of attendance policies, even though she had permission to leave without signing out. (Id. ¶¶ 33-34.) Second, Plaintiff has plausibly alleged facts supporting the inference that Defendant's employees were motivated by racial animus. Plaintiff was replaced by a "less qualified white employee." (Id. ¶ 36.) White employees broke equipment and attempted to blame Plaintiff

- 34 -

for their actions. (Id. ¶ 27(b).) White employees also "trashed" Plaintiff's workspace to try and prevent her from completing her work. (Id. ¶ 27(c).) Supervisors also allegedly treated African-American employees differently. (Id. ¶¶ 27(a), (d).) Third, this inference of racial animus is also supported by Plaintiff's allegations regarding other African-American employees. Plaintiff alleges that other African-American employees were held to higher standards than their white coworkers, specifically as it pertained to disrespect towards supervisors and attendance policies. (Id.)

Taking all these allegations as true, the court can draw the reasonable inference that Plaintiff did not actually violate any policies, but instead that Defendant was motivated by racial animus. Plaintiff has alleged sufficient facts to plausibly claim that she was terminated because of her race, not because she was performing unsatisfactorily at work. Whether these inferences prove to be true following discovery is a separate issue.

Finally, to return briefly to Defendant's res judicata defense, the court finds that Plaintiff's wrongful discharge claim arises from a different set of facts than those in Thomas I, facts that occurred eight months after the dismissal of Thomas I. Wrongful termination is a distinct claim from hostile

- 35 -

work environment or retaliation, and it requires a new harm, a discharge. See Carter, 33 F.3d at 458-62 (analyzing "Racially Discriminatory Discharge" separately from claims of retaliation and hostile work environment); Miles, 429 F.3d at 485 (laying out elements for prima facie claim of wrongful discharge). Not only is Plaintiff's wrongful discharge claim a new claim, but it also arose from facts distinct from the ones alleged in Thomas I. Though the claimed racial animus that pervaded Thomas I allegedly continued into this current action, Plaintiff's termination did not arise from the "same core of operative facts" as in Thomas I. In re Varat Enters., Inc., 81 F.3d at 1316. Plaintiff's termination is a "legally significant act[] occurring after the filing of a prior suit . . . ." Waldman, 207 F.3d at 113. Therefore, this claim is not barred on res judicata or collateral estoppel grounds.

## 2. **Retaliation**

Plaintiff has failed to allege any post-Thomas I facts that support her retaliation claim.

It is unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "A prima facie retaliation claim under 42

- 36 -

U.S.C. § 1981 has the same elements" as one under Title VII.
Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th
Cir. 2015). "To establish a prima facie case of retaliation
. . . , a plaintiff must prove (1) that she engaged in a
protected activity, as well as (2) that her employer took an
adverse employment action against her, and (3) that there was a
causal link between the two events." Id. (internal citations and
quotation marks omitted). In Plaintiff's case, the first two
elements are not in dispute; Plaintiff engaged in protected
activity in the form of filing her pro se lawsuit, participating
in the Lindsay EEOC Charge process, and filing new EEOC charges
after Thomas I and she was terminated.[10] (Compl. (Doc. 1) ¶¶ 22-
24, 30, 34.) However, Plaintiff's allegations do not plausibly
support the conclusion that the adverse employment action was
caused by her protected activity.

_____

[10] The write-up shortly following the dismissal is not
sufficiently adverse to satisfy the adverse-action prong and
will, therefore, not be considered. See Burlington N. & Santa Fe
Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("In our view, a
plaintiff must show that a reasonable employee would have found
the challenged action materially adverse, which in this context
means it well might have dissuaded a reasonable worker from
making or supporting a charge of discrimination." (internal
quotations and citations omitted)). As will be discussed below,
infra Section III.B.3, the court does not find that Plaintiff
has plausibly alleged a claim for hostile work environment,
meaning she cannot claim Defendant created or allowed a hostile
work environment as retaliation. Therefore, only Plaintiff's
termination will be considered as a retaliatory action.

- 37 -

Proving causation at the pleading stage is "not an onerous burden," and retaliation plaintiffs "do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action." Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018). However, plaintiffs must allege facts plausibly supporting an inference of causation, a task that may be accomplished by alleging facts that show the employer took an adverse action "soon after becoming aware" of protected activity. Id. at 336; see also Welton v. Durham Cty., No. 1:17-CV-258, 2018 WL 4656242, at *3 (M.D.N.C. Sept. 27, 2018), aff'd, 781 F. App'x 242 (4th Cir. 2019) (discussing Strothers, 895 F.3d at 335–36). Proving causation by temporal proximity alone requires that the adverse action must be close enough to the protected activity to permit an inference of causation. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam). Clark County School District itself cited, with approval, cases finding that periods as little as three or four months were too long. Id.

If the period of time between the protected activity and the retaliatory conduct is too long to support an inference of causation, "courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). Absent circumstances that explain

- 38 -

the delay in time, the Fourth Circuit has noted that even two-and-a-half months "weaken[s] significantly the inference of causation between" protected activity and adverse action. <u>King v. Rumsfeld</u>, 328 F.3d 145, 151 n.5 (4th Cir. 2003).[11]

Plaintiff filed her first post-<u>Thomas I</u> EEOC Charge in April 2018;[12] she was terminated on December 18, 2018. (Compl. (Doc. 1) ¶¶ 31, 34.) The gap between the two events is roughly eight months, a period of time other courts have found too long to support a plausible inference of causation. <u>Stephens v. Neal's Pallet Co.</u>, No. 3:11CV173, 2012 WL 2994651, at *7 (W.D.N.C. July 23, 2012) (eight months too long); <u>Allen v. Fed. Express Corp.</u>, No. 1:09CV17, 2011 WL 1260225, at *10 (M.D.N.C. Mar. 31, 2011) (eight months too long); see also <u>Squibb v. Mem'l Med. Ctr.</u>, 497 F.3d 775, 787 (7th Cir. 2007) (eight months too

---

[11] The circumstances in <u>King</u> were that it was a teacher who was terminated at the end of the academic year, "the natural decision point, thus making likely that any discharge, lawful or unlawful, would come at that time." <u>King</u>, 328 F.3d at 151 n.5.

[12] Plaintiff also claims she was retaliated against for participating in the Lindsay EEOC Charge investigation and pursuing her own claims in <u>Thomas I</u>. (Compl. (Doc. 1) ¶¶ 24, 35.) <u>Thomas I</u> was dismissed before Plaintiff filed her April 2018 EEOC Charge, and Plaintiff participated in the Lindsay EEOC investigation almost a year before her 2018 EEOC Charge. Causation is even weaker when based on those protected activities. It is for that reason that the court is only considering the April 2018 EEOC charge, the protected activity closest to Plaintiff's termination.

long); Christmas v. N.C. Dep't of Admin., No. 5:09-CV-346-FL, 2011 WL 1870236, at \*11 (E.D.N.C. May 16, 2011) (finding that five months "is not the sort of 'very close' temporal proximity which, standing alone, will support an inference of a causal link" (citing Clark Cty. Sch. Dist., 532 U.S. at 273)). The court finds that the eight-month gap in this case makes an inference of causation implausible without additional factual support.

As for intervening conduct that might show retaliatory animus, Plaintiff's allegations do not support a finding of retaliatory animus. Plaintiff alleges that from March 29, 2018, until December 18, 2018, "[she] continued to be subjected to severe, pervasive, and continuous discrimination and retaliation . . . ." (Compl. (Doc. 1) ¶ 27.) Plaintiff offers four examples of this conduct. (Id.) Plaintiff does not, however, allege specific dates for those allegations of discrete conduct. It is possible that these incidents all occurred prior to Plaintiff filing her April 2018 EEOC Charge. Plaintiff's allegations that she was subject to "continuous discrimination" during that period are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the court is not required to accept them. Iqbal, 556 U.S. at 678. Perhaps most significant, even if the court assumes all of the

- 40 -

specifically-alleged acts of hostile conduct occurred after April 2018, there is no allegation to support a finding the actors, most of whom were coworkers, not supervisors, were aware of her April 2018 EEOC charge. (See Compl. (Doc. 1) ¶¶ 27-33.) "[T]he facts the decision-maker actually perceived matter. If an employer . . . never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware." Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 901 (4th Cir. 2017). Though Defendant was aware of Plaintiff's Lindsay EEOC Charge interview and pro se lawsuit, (id. ¶¶ 24), those protected activities occurred more than a year-and-a-half prior to her termination, making causation implausible.

Finally, Plaintiff argues in her response that the timing is close because Plaintiff received her right-to-sue letter the day after she was terminated. (Pl.'s Resp. (Doc. 22) at 25.) Plaintiff argues that the "close proximity of these dates creates an inference that defendant was aware, either through communications with the investigator or through access to their EEOC online portal, that the EEOC was closing out her April 2018 EEOC charge prior to the date it was signed . . . ." (Id. at 25-26.) The Complaint, however, does not allege that Defendant

- 41 -

acted based on knowledge that the April 2018 EEOC charge was about to be closed, and Plaintiff's interpretation in its briefing is not a factual allegation that the court must accept. It is possible to draw the inference that Defendant acted when it did because the April 2018 EEOC charge was about to close is possible, but "factual allegations in a complaint must make entitlement to relief plausible and not merely possible . . . .""). McLean v. United States, 566 F.3d 391, 399 (4th Cir. 2009).

For these reasons, Plaintiff has failed to plausibly allege that she was retaliated against for filing her April 2018 EEOC charge or her Thomas I lawsuit. Plaintiff's retaliation claim (Claim Two) will be dismissed.

### 3. Hostile Work Environment

Plaintiff claims Defendant subjected her to a racially hostile work environment in violation of both Title VII and § 1981. Since the court is barred by res judicata from considering Thomas I facts as a part of this claim, the court finds that Plaintiff has not alleged new conduct that plausibly supports a hostile work environment claim. Plaintiff has not alleged facts showing that a post-Thomas I environment that was severe or pervasive enough to support this claim.

- 42 -

A hostile work environment is one where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted).

> [T]o prevail on a Title VII claim that a workplace is racially hostile, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.

Boyer-Liberto, 786 F.3d at 277 (internal quotations and citations omitted). "The same test applies to a hostile work environment claim asserted under 42 U.S.C. § 1981." Id.

Regarding the third prong, "[t]o be actionable, the conduct must be both objectively and subjectively offensive. To be objectively offensive, the conduct must create 'an environment that a reasonable person would find hostile or abusive,' otherwise it lies 'beyond Title VII's purview.'" Lumoa v. Potter, 351 F. Supp. 2d 426, 435 (M.D.N.C. 2004) (quoting Harris, 510 U.S. at 21–22). In determining whether a reasonable person would find an environment "sufficiently severe or pervasive," courts should consider the "frequency of the discriminatory conduct; its severity; whether it is physically

- 43 -

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). "Although hostile work environment claims often involve repeated conduct, an 'isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious.'" Ortiz v. Vance Cty. Sch., Admin. Unit, No. 5:18-CV-91-D, 2019 WL 1940596, at *5 (E.D.N.C. Apr. 30, 2019) (quoting Boyer-Liberto, 786 F.3d at 277). Finally, "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor — e.g., 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.'" Boyer-Liberto, 786 F.3d at 278 (quoting Rodgers v. W.-S. Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993)).

Turning back to this case, Plaintiff alleges that the following acts occurred between March 29, 2018, and December 18, 2018:

- 44 -

a.   A white co-employee cussed out the shipping
     supervisor in front of the plaintiff and received
     no discipline, while African-American employees
     were disciplined for insubordination.

b.   White employees broke a scale and attempted to
     place the blame on the plaintiff.

c.   White co-employees trashed plaintiff's workspace
     in an attempt to prevent her from completing her
     work.

d.   A black co-employee was suspended for an
     attendance violation, but two white employees
     were not suspended for the same violation.

(Compl. (Doc. 1) ¶ 27.) Plaintiff also alleges that she received

a disciplinary write-up for an event that never occurred. (Id.

¶¶ 28-29.)

Since Plaintiff has failed to allege conduct that is severe

or pervasive enough to state a claim for hostile work

environment, the court only addresses the third prong.

First, Plaintiff has alleged five incidents that occurred

over a period of eight months. Other courts have found similar

levels of infrequency insufficient to sustain a hostile work

environment claim. See Peeples v. Kaiser Permanente the Se.

Permanente Med. Grp., No. 1:15-cv-3029-WSD, 2017 WL 1682527, at

*4 (N.D. Ga. May 2, 2017) (finding three comments were not

pervasive); Abdullah-El v. Bon Appetit Mgmt. Co., Case No. C15-

1946JLR, 2016 WL 1756630, at *1, *4-5 (W.D. Wash. May 3, 2016)

(dismissing hostile environment claim based on several incidents

- 45 -

over seven months);[13] Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 440 (E.D. Pa. 2001) (finding that four incidents over a year-and-a-half did not state a claim for hostile environment); see also[14] Mosley v. Marion Cty., Miss., 111 F. App'x 726, 728 (5th Cir. 2004) (finding three incidents involving racial slurs insufficient to create issue for jury on hostile work environment claim); Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) ("[U]nder the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment."); Mendoza v. Borden, Inc., 195 F.3d 1238, 1249 (11th Cir. 1999) (finding that five instances over eleven months not pervasive); Cruz v. Liberatore, 582 F. Supp. 2d 508, 517-18 (S.D.N.Y. 2008) (finding five incidents over "several months" not frequent or pervasive, but were severe enough to create hostile work environment); Curtis v. First Watch of Arizona, Inc., No. Civ. 04-0909 PHX RCB, 2006 WL

---

[13] Abdullah-El was a sexual harassment case. "Although racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, we think there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment." Faragher, 524 U.S. at 787 n.1.

[14] The following cases were decided on summary judgment.

726883, at *5, *8–9 (D. Ariz. Mar. 20, 2006) (finding multiple comments over twelve-month period insufficient); Sasser v. Alabama Dep't of Corr., 373 F. Supp. 2d 1276, 1290 (M.D. Ala. 2005) (finding four incidents in nine months, including an allegedly unfounded disciplinary act, was not frequent enough to be actionable); Swain v. Cub Foods, No. 02 C 1093, 2003 WL 22232797, at *4 (N.D. Ill. Sept. 23, 2003) (finding four comments over four-month period insufficient); cf. Reedy v. Quebecor Printing Eagle, Inc., 333 F.3d 906, 908–10 (8th Cir. 2003) (finding, on summary judgment, that five instances over seven months enough when racial slurs used).

Second, the conduct alleged is also not severe enough to overcome its infrequency. An "'isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious.'" Ortiz, 2019 WL 1940596, at *5 (quoting Boyer-Liberto, 786 F.3d at 277). Plaintiff's allegations do not rise to that level. Plaintiff alleges that, on one occasion, white coworkers broke equipment and then blamed her. This act, if true, is disturbing, but it is not physically threatening nor is it severe enough to say it materially alters the terms of employment.

Plaintiff also alleges that white coworkers "trashed" her workspace in an effort to prevent her from completing her work.

- 47 -

Though such an act could "unreasonably interfere[] with [Plaintiff's] work performance," Harris, 510 U.S. at 23, the conduct is still not so severe or physically humiliating as to create a hostile environment, see, e.g., Boyer-Liberto, 786 F.3d at 270; Cruz, 582 F. Supp. 2d at 517–18. Plaintiff herself was not physically threatened. The fact that coworkers and not a supervisor took the action also decreases its severity. This act likely interfered with Plaintiff's work, but it is only alleged to have occurred once.

The allegedly disparate treatment of African-American employees by supervisors also is not severe enough to overcome the infrequency of the alleged conduct. Plaintiff does not allege her own write-up in March 2018 was the result of race, but retaliation. That leaves only two other alleged incidents of racial preference by supervisors. These two incidents, spread over more than eight months, are too infrequent to support Plaintiff's hostile work environment claim.

Plaintiff has failed to plausibly allege facts supporting her hostile work environment claims. The facts do not plausibly support the conclusion that Plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." Harris, 510 U.S. at 21 (internal quotation marks omitted).

Regardless of whether consideration of Thomas I facts would lead to a different result, the court is foreclosed from basing liability on those facts.[15] The court notes that Plaintiff's post-Thomas I allegations do not specify who her supervisors

---

[15] As previously stated, the court will not consider the facts alleged in paragraph 18 since Plaintiff has not pled facts that would allow the court to infer whether these acts occurred before or after the filing of Thomas I.

Furthermore, though Morgan's timeliness principles do not apply in this instance, see supra note 4, even Morgan's continuing violation exception would not save Plaintiff's hostile work environment claim. The Morgan Court noted, with approval, that the lower court concluded that "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Morgan, 536 U.S. at 120 (alterations in original) (internal quotations omitted); Duncan v. Manager, Dep't of Safety, City & Cty. of Denver, 397 F.3d 1300, 1308 (10th Cir. 2005) ("Morgan emphasizes that there must be a relationship between acts alleged after the beginning of the filing period and the acts alleged before the filing period . . . ."); McLaughlin v. Barr, No. 1:19-CV-318, 2020 WL 869914, at *8 (M.D.N.C. Feb. 21, 2020) (noting the same).

Here, Plaintiff alleges a different kind of conduct than that occurred in Thomas I. Thomas I's hostile work environment allegations contained numerous examples of overtly racist remarks and comments made by at least one supervisor. (See Compl. (Doc. 1) ¶ 11.) Thomas II's facts, by contrast, are limited in number; the worst acts are confined to coworkers, not supervisors. (Id. ¶ 27.) Thomas II's facts also occurred almost thirteen months after Thomas I's. (Id. ¶¶ 11, 27.) The contrasts in type, quantity, and the gap in time suggests that Thomas I's allegations, even if the court could consider them, would have less probative value in evaluating Thomas II's allegations. Even the allegations in paragraph 18 are different in kind and quantity from those in paragraph eleven. (Id. ¶¶ 11, 18.)

- 49 -

were. (Compl. (Doc. 1) ¶ 9.) The supervisor responsible for some of the worst conduct alleged in Thomas I, Robby Collins, is no longer mentioned in Thomas II. (See Answer (Doc. 12) at 31–59.) Unlike Thomas I, Plaintiff does not provide direct evidence of any overtly racist behavior, such as Facebook posts. (See id.) Also, Plaintiff's post-Thomas I allegations mostly involve racist acts by coworkers, not supervisors. (Compl. (Doc. 1) ¶ 27.) These differences between Thomas I and Thomas II suggest that Plaintiff's work environment is not the same between the two suits, buttressing the conclusion that behavior alleged outside paragraph twenty-seven of the Thomas II Complaint is part of the core of operative facts litigated in Thomas I, but not here in Thomas II.

In a case such as this where a series of conduct has been previously litigated and is now barred by res judicata, "the occurrence of another like incident or two [of harassment] would probably not be enough to change matters." Waldman, 207 F.3d at 113-14. Though Defendant has allegedly continued to allow some degree of hostility to persist, Plaintiff's allegations are either "additional instances of what was previously asserted," id. at 113, or are part of an entirely new core of operative facts. Since they are, Defendant's motion will be granted as to

Plaintiff's hostile work environment claims under Title VII and § 1981.

## C. Wrongful Discharge in Violation of North Carolina Public Policy

Plaintiff's final claim alleges that she was wrongfully discharged in violation of North Carolina's public policy as stated in N.C. Gen. Stat. § 143-422.2. (Compl. (Doc. 1) ¶¶ 60–65.) Defendant argues that res judicata and/or collateral estoppel bars this claim or, in the alternative, the post-Thomas I facts do not plausibly support the claim. The court ultimately finds that Plaintiff has plausibly alleged a North Carolina Public Policy claim.

While "North Carolina is an employment-at-will state. . . . [The North Carolina Supreme Court] has recognized a public-policy exception to the employment-at-will rule." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331–32, 493 S.E.2d 420, 422 (1997); see also Coman v. Thomas Mfg. Co., 325 N.C. 172, 175–76, 381 S.E.2d 445, 447 (1989). For example, where the defendant corporation terminated the plaintiff "for refusing to work for less than the statutory minimum wage," this conduct violated the clearly articulated public policy of the state and the plaintiff could maintain a wrongful discharge claim. Amos v. Oakdale Knitting Co., 331 N.C. 348, 351–54, 416 S.E.2d 166, 168–70 (1992). Further, "absent (a) federal preemption or (b) the

- 51 -

intent of our state legislature to supplant the common law with exclusive statutory remedies, the availability of alternative remedies does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception." Id. at 356–57, 416 S.E.2d at 171; see also Hicks v. Robeson Cty., No. 7:98-CV-105-BR(I), 1998 WL 1669080, at *4 (E.D.N.C. Oct. 15, 1998) (finding that "the availability of a remedy under Title VII does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception").

North Carolina law provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . ." N.C. Gen. Stat. § 143-422.2. Defendant allegedly violated this policy by permitting a racially charged hostile work environment and discriminating against Plaintiff by terminating her. The legal standard for a public policy wrongful discharge claim is the same as for a Title VII, or 42 U.S.C. § 1981, discrimination claim. See Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).

Plaintiff's potential federal remedies do not preempt this claim. Plaintiff has plausibly alleged wrongful discharge claims

- 52 -

under Title VII and § 1981. Therefore, Defendant's motion to dismiss Plaintiff's state-law wrongful discharge in violation of public policy claim will be denied.

## IV. CONCLUSION

Based on facts that occurred after Thomas I was dismissed, Plaintiff has plausibly alleged claims for wrongful discharge under Title VII, § 1981, and North Carolina Public policy. Plaintiff has failed to plausibly allege any claim for retaliation or hostile work environment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings, (Doc. 14), is **DENIED IN PART AND GRANTED IN PART.** Defendant's Motion is **GRANTED** as to Claim Two and as to Claims One and Three to the extent they rely on a hostile work environment claim. Defendant's Motion is **DENIED** as to Claim Four as well as Claims One and Three to the extent those claims rely on a wrongful termination claim.

This the 28th day of July, 2020.

William L. Osteen, Jr.
United States District Judge

- 53 -